# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Chartiers Community Mental Health and Retardation Center,<br><br>Petitioner<br><br>v.<br><br>Unemployment Compensation Board of Review,<br><br>Respondent | :<br>:<br>:<br>:<br>:<br>:<br>: No. 1677 C.D. 2015<br>: Submitted: February 5, 2016<br>:<br>:<br>:<br>:<br>: |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                          **FILED:  March 10, 2016**

Chartiers Community Mental Health and Retardation Center (Employer) petitions for review of the August 13, 2015 order of the Unemployment Compensation Board of Review (Board) concluding that Susan R. Flynn (Claimant) was not ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law) because Employer failed to demonstrate that Claimant's conduct amounted to willful misconduct under the Law.  We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to discharge for willful misconduct connected to his or her work.  43 P.S. § 802(e).

Claimant filed an initial internet claim for unemployment compensation on March 15, 2015, and listed the reason she was given for her discharge as "taking action without authorization." (Record Item (R. Item) 2, Claimant Separation Information.) Employer submitted separation information in which it stated that Claimant was discharged for the manner in which she handled the revision of Employer's vehicle maintenance policy and misrepresentations Claimant made during an investigation of her revision of that policy. (R. Item 3, Employer Separation Information.) The Department of Labor and Industry (Department) conducted an oral interview with Claimant on April 3, 2015. (R. Item 4, Oral Interview.) On April 6, 2015, the Department issued a Notice of Determination finding Claimant was not ineligible for unemployment compensation because her conduct did not amount to willful misconduct under the Law. (R. Item 5, Notice of Determination.) Employer appealed the Department's Notice of Determination and a hearing was subsequently scheduled before the Referee on May 14, 2015. (R. Item 6, Employer's Appeal to the Referee; R. Item 8, Notices of Hearing w/ Continuance Information; R. Item 10, Hearing Transcript.)

On May 20, 2015, the Referee issued a decision and order finding Claimant ineligible for unemployment compensation because during the investigation of Claimant's handling of the revision of Employer's vehicle maintenance policy, Claimant had deviated from the standard of behavior her Employer had a right to expect by falsely stating that no one had told her the policy was working well and no revisions were needed. (R. Item 11, Referee Decision and Order.)

On May 26, 2015, Claimant submitted an appeal of the Referee's decision to the Board via electronic mail (email). (R. Item 12, Claimant's Petition to Appeal.) The Board responded that same day via email stating that it was unable to open the secure message box in Claimant's email and requested that Claimant resend the information contained in the secure message box. (*Id*.) Claimant resubmitted by facsimile her request to appeal the Referee's order, to file a brief with the Board, and to receive a copy of the hearing transcript and exhibits and the facsimile was marked as received by the Board on June 12, 2015. (*Id*.) On June 30, 2015, the Board granted Claimant's request to file a brief with the Board and forwarded Claimant a copy of the hearing transcript and exhibits. (R. Item 13, Board's Response/ Permission to Appeal.) Claimant and Employer both submitted briefs for the Board's review, with Employer arguing, *inter alia*, that Claimant's appeal was untimely and should be rejected by the Board without a review of the merits. (R. Items 14, 16, 19, Employer's and Claimant's Briefs.)

On August 13, 2015, the Board issued a decision and order finding Claimant's appeal was timely and that Claimant was not ineligible to receive unemployment compensation due to willful misconduct. (R. Item 20, Board's Decision and Order.) In its decision, the Board made the following findings of fact:

> 2. In December 2014/January 2015, the chief executive officer (CEO) assigned [Claimant] seven projects, each with varying deadlines. One project was to reformat and update the 84 fiscal policies and procedures with a deadline of March 1, 2015.
>
> 3. One of the 84 policies was the "Fleet Management—Routine Maintenance" policy, which had been last updated in January 2014.

4.  That policy required the drivers of the [Employer's] fleet vehicles to make arrangements for the vehicles to be serviced.  The accounts payable payroll accountant (accountant) and the chief operating officer of recovery support services (COO), who managed the fleet, normally coordinated the servicing with a local garage.

5. When reviewing and updating the vehicle maintenance policy, [Claimant] found an old handwritten note from the COO questioning whether [Employer] should be using "billable staff" to perform routine maintenance, and a handwritten note from the CEO questioning whether the policy was what they had agreed to.

6.  [Claimant] thought it would be more efficient to have the drivers take the vehicles to a local oil change shop for oil changes every six months, but leave the other servicing to the local garage.

7.   On February 26, 2015, [Claimant] contacted the COO and informed him that she was revising the policies and procedures related to agency vehicles.  She expressed that the accountant did not have time to take vehicles to the garage.  The COO told [Claimant] that it was difficult for the agency employees to do so as well but "we are doing the best we can" and "if there are issues...[they] can work them out."  He also noted that the local garage was very accommodating.  The COO told [Claimant] that "we make it work and that it is not a frequent occurrence."  He also asked to be "consulted as needed."

8.   On February 27, 2015, [Claimant] contacted the accountant to discuss the policy, and [Claimant] expressed that she thought the policy should be changed.  She had the accountant call around to local shops to see if they could get a corporate discount for oil changes.  The accountant told [Claimant] that he thought they should continue with the local garage.  [Claimant] told the accountant that she wanted to have a meeting with him and the COO, but the accountant told her that she had to contact his boss.

9.  [Claimant] revised the vehicle maintenance policy to reflect that the vehicles be taken every six months for a 15-minute oil change and an 18 point check at a local oil shop.

10.  On February 27, 2015, [Claimant] sent an e-mail to the COO with her proposed changes to the policy and asked for his input.

4

11. The COO was not in the office at that time and did not respond to [Claimant].

12. At 3:23 a.m, on March 2, 2015, [Claimant] sent an e-mail to the CEO with a link to the public folders with her revisions to the 84 policies, including her proposed changes to the routine maintenance policy.

13. On March 2, 2015, the COO complained to the CEO that the prior policy was being changed without his knowledge or input.

14. On March 3, 2015, the CEO and the HR officer met with [Claimant] and asked if she had input from the COO or accountant in the changes to the policy. [Claimant] indicated that she had not spoken to the COO, but did send him a copy of the changes in an e-mail but had not heard back from him. They told [Claimant] that others were not happy with the changes, and [Claimant] said that surprised her and that "she must not have asked the right questions to say that the policy was actually working fine."

15. Policies can only be implemented with the approval of the CEO and/or board of directors and this proposed change to the policy was never implemented.

16. On March 13, 2015, [Employer] terminated [Claimant's] employment for taking it upon herself to revise a policy that had been revised less than a year prior and for materially misrepresenting the details involved in those changes during the March 3, 2015, meeting.

17. The final date to appeal the Referee's decision was June 4, 2015.

18. On May 26, 2015, [Claimant's] attorney e-mailed an appeal to the Board, which was received by the Board.

19. The Board informed [Claimant's] attorney via e-mail that it was unable to open the secure message box in the e-mail and to provide the information either as an attachment or in the body of the e-mail. The Board did not provide a deadline.

20. On June 12, 2015, [Claimant's] attorney faxed to the Board a copy of the May 26, 2015, e-mail with the secure content.

(*Id*., Findings of Fact (F.F.) ¶¶2-20.) In addition to its findings of fact, the Board engaged in a lengthy discussion detailing its reasoning for concluding that (i) Claimant's appeal was timely and (ii) that Claimant had not engaged in willful misconduct. (*Id*., Discussion.) Addressing the issue of timeliness, the Board concluded that Claimant's appeal was timely because "[a]lthough the e-mail was unable to be read by the Board's staff, it is clear that [Claimant's] attorney filed an appeal on [Claimant's] behalf on May 26, 2015, within the appeal deadline, thereby preserving the appeal date. The [Claimant's] attorney followed up with an unsecured copy of the e-mail." (*Id*., Discussion at 3.) Next, the Board found Claimant's testimony to be credible, resolving all conflicts in the testimony in Claimant's favor, and found that the testimony from Employer's HR officer was cryptic and the testimony from Employer's COO was "disingenuous." (*Id*., Discussion at 4.) After thoroughly reviewing the record, the Board concluded that "[Claimant's] conveyance of her perception of [her and the COO's] conversation was not an act of dishonesty toward the [Employer]." (*Id*.) Accordingly, the Board reversed the Referee and granted Claimant unemployment compensation benefits. Employer appealed.

Before this Court, Employer argues that Claimant's appeal to the Board was untimely and that the Board erred in concluding that Employer did not meet its burden to demonstrate that Claimant's conduct amounted to willful misconduct under the Law. [2]

---

[2] Our review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Davila v. Unemployment Compensation Board of Review*, 926 A.2d 1287, 1289 n.3 (Pa. Cmwlth. 2007). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *On Line Inc. v. Unemployment Compensation Board of Review*, 941 A.2d 786, 788 n.7 (Pa. Cmwlth. 2008).

In support of its argument that the Board erroneously permitted Claimant to file an untimely appeal, Employer relies upon Subsection 4 of 34 Pa. Code § 101.82(b), which addresses appeals filed by email and provides:

> *Electronic transmission other than fax transmission*. The date of filing is the receipt date recorded by the Department appeal office or the Board's electronic transmission system, if the electronic record is in a form capable of being processed by that system. A party filing by electronic transmission shall comply with Department instructions concerning format. A party filing an appeal by electronic transmission is responsible for using the proper format and for delay, disruption, interruption of electronic signals and readability of the document and accepts the risk that the appeal may not be properly or timely filed.

*Id*.; *see also* 34 Pa. Code § 101.102 (providing that the regulations applicable to appeals from the Department and from a Referee's decision are applicable to appeals to the Board). Employer contends that Claimant was advised via email on May 26, 2015 that her appeal was not readable and that the documents Claimant later submitted to the Board via facsimile were not stamped as received by the Board until June 12, 2015, well beyond Claimant's appeal date. Employer argues that because Claimant's email was not time-stamped by the Board as received, the date of filing for Claimant's appeal is June 12, 2015, and therefore, the appeal is untimely.

Employer misconstrues the Board's regulation. Subsection 4 of 34 Pa. Code § 101.82(b), provides that the date of filing is "the receipt date recorded by the Department appeal office or the Board's electronic transmission system, if the electronic record is in a form capable of being processed by that system." *Id*. The email sent by Claimant's counsel was recorded by the Board's electronic

7

transmission system on May 26, 2015. (R. Item 20, Board's Decision and Order, F.F. ¶18.) While Claimant accepted "the risk that the appeal **may** not be properly or timely filed," the Board responded on May 26, 2015, alerting Claimant that the appeal had been received and instructing Claimant to resend the unreadable section of the email. *Id.*; (R. Item 20, Board's Decision and Order, F.F. ¶¶18-19). The Board did not fail to receive the appeal or reject it, nor did it inform Claimant that the additional information must be resent within a specific time frame. (R. Item 20, Board's Decision and Order, F.F. ¶¶18-19).

In addition to Subsection 4 of 34 Pa. Code § 101.82(b), Employer cites a number of cases by this Court, both published and unpublished,[3] to support its argument that an email received by the Board in an unreadable format is insufficient to preserve Claimant's statutory appeal date. The precedent cited by Employer in support of its argument, however, is in accord with the Board's conclusion that Claimant's appeal was timely.

In *Mountain Home Beagle Media v. Unemployment Compensation Board of Review*, 955 A.2d 484 (Pa. Cmwlth. 2008), the employer asserted that it faxed an appeal on August 27, 2007, while the Board found that the Department first received the appeal by fax on September 6, 2007. *Id.* at 486. This Court rejected the employer's request to appeal *nunc pro tunc* on the basis that employer's own fax machine showed a confirmation that the facsimile was sent on August 27, 2007. *Id.* at 487. Instead, we concluded that "the date of filing is the date that it is acknowledged as received by a representative of the Department or the Board not the date of the fax." *Id.* (internal citations omitted).

---

[3] *See* Commonwealth Court Internal Operating Procedure 414, 210 Pa. Code § 69.414 (an unreported Commonwealth Court panel decision issued after January 15, 2008 may be cited for its persuasive value).

Likewise, in *Roman-Hutchinson v. Unemployment Compensation Board of Review*, 972 A.2d 1286 (Pa. Cmwlth. 2009), the claimant asserted that she appealed the Referee's decision to the Board via a June 30, 2008 email, however, the Board did not receive the email and instead first became aware of claimant's appeal in a facsimile received on July 17, 2008. *Id*. at 1288. This Court concluded that "even if [c]laimant emailed her appeal *before* the appeal deadline, it was untimely because it was not received by the UC authorities until *after* the deadline. Consequently, [c]laimant's argument fails. Further, the regulation clearly contemplates malfunction in the email delivery system and places the resulting risk of an untimely filing on the [c]laimant." *Id*. at 1289 (internal citations omitted).

In *McClean v. Unemployment Compensation Board of Review*, 908 A.2d 956 (Pa. Cwmlth. 2006), a claimant asserted that his counsel emailed a timely appeal to the Board on January 10, 2006, but because counsel did not receive a response, counsel also mailed a copy of the email to the Board on January 24, 2006; the Board did not receive the mailed appeal until one day after the filing deadline and the email was not received until January 27, 2006. *Id*. at 957. This Court rejected the claimant's assertion that he should have been given more leeway because he was not aware until February 2, 2006, after the statutory appeal period, that the board did not receive his appeal. *Id*. at 958. Instead, we concluded that under Subsection 4 of Section 34 Pa. Code § 101.82(b), a claimant assumes the risk that comes with filing an appeal by email and that is incumbent on the claimant to "ascertain whether the Board had received [the claimant's] e-mail appeal before, rather than after, the statutory time period for appealing the referee's decision had passed." 908 A.2d at 959.

Unlike the employer in *Mountain Home Beagle Media* and the claimants in *Roman-Hutchinson* and *McClean*, the Claimant in the instant matter was informed by a representative of the Board that her appeal was received prior to the expiration of the statutory appeal period. The Board's confirmation of receipt preserved May 26, 2015 as Claimant's filing date. Neither the Board's regulation nor this Court's precedent is to the contrary, rather the language of the regulation and our cases support the Board's conclusion that Claimant's appeal was timely. Accordingly, Claimant did not request to file a late appeal and such relief was not granted by the Board because Claimant's appeal was filed within the statutorily mandated appeal period.

Employer also argues that if this Court concludes that Claimant's appeal was timely filed, we must still conclude that the Board erred in reviewing the merits because the unreadable portion of Claimant's email identified the substantive issues raised on appeal and the email, absent the unreadable content, was insufficient to preserve any issues for the Board's review.

Subsection 4 of 34 Pa. Code § 101.82(b) provides that an employer or a claimant accepts the risk that an electronic transmission, including an email, may not be received once it is sent because of format, disruption, and any number of issues that may arise due to the use of electronic transmission; a risk, however, is not a certainty. As long as the electronic transmission is received prior to the expiration of the appeal period, the regulation affords the Board discretion to instruct the employer or claimant on how to proceed if there is an issue with readability. This is not unlike this Court's own internal operating procedures, which direct the Chief Clerk to time-stamp written communication that evidences an intention to appeal with the date of receipt and to advise the party by letter of

the procedures necessary to perfect an appeal, as well as the time within which the party must file a fully conforming petition for review in order to preserve the date of receipt of the original non-conforming request to appeal. *See* Commonwealth Court Internal Operating Procedure No. 211, 210 Pa. Code. § 69.211 (Petition for Review; Clarification). The Board acted fully within its discretion in directing Claimant to resend the unreadable segments of her email once it had received her appeal.

Employer's argument that two of our unpublished memorandum opinions should persuade this Court otherwise is unavailing. In the memorandum opinions cited by Employer, one claimant simply stated that she wished to appeal and the other that the benefits belonged to him because he worked hard.[4] The claimants in the opinions cited by Employer did not receive instructions from the Board that the appeals were received but contained unreadable segments, did not follow up on those instructions by resending information that clearly identified the basis for the appeals, and did not file briefs with the Board. The unpublished memorandum opinions cited by Employer are not analogous to the facts in the instant matter. To preserve an issue for the Board's review, a claimant must provide "*some* indication, however inartfully stated, of precisely what error(s) occurred and where the tribunal should focus its attention." *Merida v. Unemployment Compensation Board of Review*, 543 A.2d 593, 595 (Pa. Cmwlth. 1988). Claimant did so here. Had Claimant failed to follow the Board's instructions and relied solely upon the readable sections of her May 26, 2015

---

[4] *See Dorbach v. Unemployment Compensation Board of Review*, (Pa. Cmwlth. No. 2225 C.D. 2012, filed July 25, 2013), 2013 WL 3866515 at *2, slip op. at 4; *Johnson v. Unemployment Compensation Board of Review*, (Pa. Cmwlth. No. 1134 C.D. 2010, filed July 22, 2010), 2010 WL 9511364 at *2 & n.4, slip op. at 4 & n.2.

email, the unpublished decisions cited by Employer would carry more weight and our decision might be different, but those facts are not before us.

Addressing the substantive issues in the Board's opinion and order, Employer argues that it demonstrated by substantial evidence that Claimant committed willful misconduct under the Law and that the Board erred in concluding that Employer failed to meet its burden. Although Employer attempts to frame its argument as a challenge to findings of fact that are not supported by substantial evidence, Employer's argument hinges on this Court accepting as credible evidence that the Board specifically rejected as incredible. However, it is well-settled that the Board is the ultimate finder of fact, empowered to determine credibility, and weigh and resolve conflicts in the evidence. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. 1985); *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 368 (Pa. Cmwlth. 2008). This Court's review of a decision by the Board does not permit it to reweigh the evidence or substitute its own findings for those made by the Board. *Peak*, 501 A.2d at 1388; *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). Accordingly, Employer's argument is without merit and this Court will not reweigh the testimony of record to find that the testimony of Employer's witnesses was credible and sufficient evidence to carry its burden under the Law.

The order of the Board is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chartiers Community Mental Health
and Retardation Center,

           Petitioner

           v.

Unemployment Compensation
Board of Review,

           Respondent

:
:
:
:
:
:
: No. 1677 C.D. 2015
:
:
:
:
:
:

# **O R D E R**

AND NOW this 10th day of March, 2016, the order of the Unemployment Compensation Board of Review in the above-captioned matter is AFFIRMED.

**JAMES GARDNER COLINS, Senior Judge**