IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert D. Anderson,                          :
                           Petitioner        :
                                             :   No.  144 C.D. 2018
                   v.                        :
                                             :   Submitted:  November 21, 2018
Unemployment Compensation                    :
Board of Review,                             :
                           Respondent        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED:  February 8, 2019


          Robert D. Anderson (Claimant) petitions for review of the January 5, 2018 order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision that found Claimant ineligible for unemployment compensation (UC) benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1]

---

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act."  43 P.S. §802(e).

## Facts and Procedural History

Claimant worked as a full-time truck driver for the Zook Molasses Company (Employer) from September 2014 until April 13, 2017. (Board Finding of Fact (F.F.) No. 1.) Claimant was discharged on April 13, 2017 for violating federal motor carrier hours-of-service rules and for falsifying his service hours. (F.F. No. 16; Certified Record (C.R.) at Item No. 9, Notes of Testimony (N.T.), 6/29/17, at 3-4.)

Claimant applied for UC benefits and, on May 30, 2017, the local service center found Claimant eligible for benefits. (C.R. at Item No. 4.) Employer appealed and a referee conducted a hearing on June 29, 2017, at which two Employer witnesses appeared and testified; however, Claimant did not appear at the referee hearing. (C.R. at Item No. 9.) The referee denied UC benefits pursuant to section 402(e) of the Law. (Referee decision at 3.)

Thereafter, Claimant appealed arguing that he had not been afforded an opportunity to appear at the referee hearing because he had requested a continuance due to his sister being scheduled for surgery and believed that he had been granted a continuance. (C.R. at Item No. 11.) The Board determined that a further hearing was proper and remanded the matter to the referee, to serve as a hearing officer, in order to receive testimony and evidence on Claimant's reason for not appearing at the hearing and for the parties to provide new or additional testimony on the merits. (C.R. at Item No. 13.) On September 15, 2017, the referee conducted a remand hearing at which Claimant and one other witness appeared and testified. (C.R. at Item No. 15.)

After the remand hearing, the Board made the following findings of fact:

1. [Claimant] was last employed as a full-time driver for Zook Molasses. He began employment on September 11, 2014 until April 13, 2017.

2. [Employer] is a fleet operator regulated by the Federal Motor Carrier Safety Agency, and the agency prescribes regulations which [Employer] is required to abide with.

3. [Claimant] was suspended for three days for violating the motor carrier regulations.

4. [Employer] requires its drivers to sign in when the truck is moving so that his on-duty time is logged in.

5. [Employer]'s trucks also have a GPS attached to the engine, [of] which the drivers were not aware.

6. On April 12, 2017, [Employer] assigned [Claimant] to a driving route that was located approximately [one] mile away.

7. [Claimant] did not return from his route until five hours later.

9. On April 12, 2017, the [Employer]'s computer system in [Employer]'s truck produced a GPS record.

10. The record showed a "stop work" of five hours that the employer could not show accurate hours of service. This resulted in an overage and an hour of service violation.

11. In his final meeting with [Employer], [Claimant] admitted that he would take [Employer]'s truck home on the weekend without authorization.

12. [Claimant] would not log in the truck and [Claimant] would use the truck for his personal business.

3

13. [Employer] only became aware of [Claimant]'s conduct because the GPS indicated that the claimant was moving the truck.

14. [Claimant] admitted that he used [Employer]'s truck to go to his other job where he owns an egg company.

15. On days that [Claimant] did not communicate with [Employer], [Employer] determined that [Claimant] was in the area of his egg company.

16. [Claimant] was discharged for violating the hours-of-service regulations and for falsifying his service hours. In addition, [Claimant] was discharged for failing to log in while operating the truck.

17. [Claimant] did not appear for the first hearing that was scheduled by telephone.

18. [Claimant] requested a continuance of the hearing because his sister was scheduled for surgery related to a cancer diagnosis.

19. [Claimant] had communication with the [r]eferee office and believed his request for a continuance was granted.

20. [Claimant] did not see the [r]eferee's response because he was in the hospital with his sister.

(F.F. Nos. 1-25.)

Based on its findings, the Board determined that Claimant had proper cause for not appearing at the June 29, 2017 hearing. (Board decision at 3.) Therefore, the Board considered the testimony and evidence from both hearings in rendering its decision. *Id.* Reviewing the testimony from the two hearings, the Board made the following credibility determinations:

Here, the Board credits [Employer]'s testimony that [Claimant] was violating his hours of service and that he

4

falsified his hours of service by not logging in while operating [Employer]'s truck after repeated warnings. The Board rejects [Claimant]'s testimony and his witness's testimony that [Employer] encouraged him to work over his hours and that he was never warned for his behavior. In addition, the Board discredits [Claimant]'s testimony that he only drove [Employer]'s truck without logging in when he received permission from [Employer]. Finally, the Board rejects [Claimant]'s reasons for why he did not return for five hours on April 12, 2017, and that he was in communicating (sic) with [Employer]. Based on the Board's credibility determination, [Claimant] did not have good cause for his behavior and, thus, his behavior fell below the standards of behavior [Employer] had a right to expect.

*Id.* Consequently, the Board concluded that Claimant was ineligible for benefits under section 402(e) of the Law. *Id.*

Claimant now petitions this Court for review of the Board's order,[2] arguing that (1) there is not substantial evidence to support a finding of willful misconduct; (2) the Board's findings of fact that Claimant knowingly took Employer's truck to use for an egg company he owns and failed to communicate with Employer are not supported by substantial evidence; and (3) Employer introduced inadmissible hearsay at the June 29, 2017 hearing, which was unfairly prejudicial to Claimant.

---

[2] Our review of the Board's decision "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

**Discussion**

Initially, we note that section 402(e) of the Law provides that an employee shall be ineligible for UC benefits for any week in which his unemployment is due to willful misconduct connected to his work. 43 P.S. §802(e). Willful misconduct is defined as (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa. 2003). Whether a claimant's conduct constitutes willful misconduct is a question of law fully reviewable by this Court on appeal. *Temple University of the Commonwealth System of Higher Education v. Unemployment Compensation Board of Review*, 772 A.2d 416, 418 n.1 (Pa. 2001). If an employer alleges misconduct because of a claimant's violation of a work rule, the employer must prove the existence of the rule and its violation, and the burden then shifts to the claimant to show good cause for his actions. *McKeesport Hospital v. Unemployment Compensation Board of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993).

Claimant first argues that the record lacks substantial evidence to support a willful misconduct finding. Claimant maintains that he did not intentionally disregard the Employer's interests and was merely seeking to further Employer's interests. Claimant contends that he had permission to drive Employer's truck home in order to perform routine maintenance on the truck. Claimant further argues that he was justified in not communicating with Employer. He claims that his Employer-provided headset was broken, that he could not hear his phone over the noise of the truck, and/or was not permitted to use his phone while driving the truck. Additionally, Claimant asserts that although he worked beyond his service hours on

6

occasion, it was done at Employer's request and that, therefore, he did not engage in willful misconduct. Finally, Claimant alleges he had good cause to work beyond his service hours because on one occasion an injury in his knee flared up, he was not able to drive, and had to remain in place for several hours.

In UC cases, the Board's findings of fact must be supported by "[s]ubstantial evidence [which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *Western & Southern Life Insurance Co. v. Unemployment Compensation Board of Review*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Western & Southern Life Insurance Co.*, 913 A.2d at 335. This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony" to determine if substantial evidence exists for the Board's findings. *United States Banknote Co. v. Unemployment Compensation Board of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990). Moreover, "even if there is contrary evidence of record, the Board's findings of fact are binding upon the Court where supported by substantial evidence." *Borough of Coaldale v. Unemployment Compensation Board of Review*, 745 A.2d 728, 731 (Pa. Cmwlth. 2000). It is irrelevant whether the record contains evidence to support findings other than those made by the Board in its role as fact-finder; the critical inquiry is whether evidence of record exists supporting the findings that were actually made. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

Further, in UC cases, "it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness

7

credibility and evidentiary weight." *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (citing *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. Cmwlth. 1985)). "The Board is also empowered to resolve conflicts in the evidence." *Serrano*, 149 A.3d at 439. "'Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review.'" *Id.* (quoting *Peak*, 501 A.2d at 1388). "The Board is the arbiter of credibility and is free to accept or reject the testimony of any witness in whole or in part." *Ackley v. Unemployment Compensation Board of Review*, 166 A.3d 565, 568 (Pa. Cmwlth. 2017). Moreover, "[t]his Court's review of a decision by the Board does not permit it to reweigh the evidence or substitute its own findings for those made by the Board." *Chartiers Community Mental Health and Retardation Center v. Unemployment Compensation Board of Review*, 134 A.3d 1165, 1172-73 (Pa. Cmwlth. 2016).

Here, Claimant's argument is nothing more than an attempt to have this Court accept his version of the facts, instead of those found by the Board. After a review of the record, we conclude that there is substantial evidence to support the Board's determination that Claimant engaged in willful misconduct by violating hours-of-service regulations and for falsifying his service hours.

At the June 29, 2017 referee hearing, Employer's Human Resources Director, Jamie Gould, testified that Claimant was discharged for violating federal motor carrier hours-of-service rules and for falsification of hours-of-service. (N.T., 6/29/17, at 3-4.) Employer's Director of Transportation and Fleet Safety, Floyd Ridenour, testified that all commercial driver's license regulated drivers have to abide by the federal motor carrier hours-of-service rules, because they are the law, and that falsification of hours-of-service is one of the worst ways to break the law. *Id.* He also testified that one incident of falsification can be grounds for termination. (N.T.,

6/29/17, at 4.) Ridenour explained that he had previously talked to Claimant about the hours-of-service rules and that, prior to termination, Claimant received a written warning and three-day suspension for hours-of-service violations. (N.T., 6/29/17, at 4-5.)

Ridenour testified that the final incident that led to Claimant's discharge occurred on April 12, 2017. (N.T., 6/29/17, at 5.) Ridenour stated that both the truck's onboard computer log and a GPS device attached to the truck's engine record the truck's location. *Id.* Whenever drivers operate trucks, they are required to log into the onboard computer in order to record their hours-of-service. (N.T., 6/29/17, at 5-7.)[3] However, Ridenour testified that on the day in question, there was a five-hour period of time when Claimant did not log into the onboard computer. (N.T., 6/29/17, at 5-6.) Ridenour also stated that although Claimant was assigned a route that day, which was located only 1.25 miles from Employer's site, Claimant "did not return for five hours" and "did not communicate with" Employer during that time period. (N.T., 6/29/17, at 6.) Drivers are legally only permitted to work 14 hours-of-service per day, including 11 hours of driving time, and are required to take a 30-minute hours-of-service break each day. *Id.* Because Claimant did not log into the computer, Employer was unsure if he was complying with the hours-of-service or hours-of-service break requirements. *Id.* Specifically, Ridenour stated,

> So with [Claimant] taking five hours of overage we will call it and not communicating to us at all, we don't know, we didn't know if he was okay or not okay, or violating the law or not violating the law and he took a 30-minute break without logging. He didn't log it in the need to see it log as a 30-minute regulation break and it wasn't done so . . . this

---

[3] Claimant also testified that he was required to log into the truck's onboard computer whenever he was driving. (C.R. at Item No. 15, N.T., 9/15/17, at 16-17.)

9

is on the tail end of multiple other days in a row of, of severe violations of, of up to the 14-hour rule also.

(N.T., 6/29/17, at 6.) Ridenour additionally testified that there were instances when Claimant took Employer's truck home on weekends, but did not sign into the onboard computer. (N.T., 6/29/17, at 7.)

Ridenour stated that because Claimant had driven the truck without logging in, he effectively falsified his hours and, therefore, was terminated. (N.T., 6/29/17, at 8.) In particular, Ridenour explained that Claimant's "failure to log in while operating the truck" was a falsification because "[h]e was driving the truck," but "chose not to say he was driving the truck." (N.T., 6/29/17, at 7.) Ridenour testified that Employer terminates anyone who drives outside the hours-of-service or falsifies hours-of-service. *Id.*

Based on the foregoing testimony, we conclude that substantial evidence supports the Board's findings that Claimant violated hours-of-service regulations and falsified his hours-of-service. (F.F. Nos. 10, 12, 16.) Employer's witnesses testified that Claimant was aware that he was required to log into his truck's onboard computer whenever he drove it or took his mandatory break, but that on multiple occasions, Claimant failed to do so. Employer's witnesses also testified that Claimant did not log into his truck's computer when he took it home on the weekend, and that on April 12, 2017, did not log into the computer during a five-hour period. Employer's witnesses testified that they could not determine whether Claimant was in compliance with federal regulations when he did not log in, and that Claimant had falsified his hours-of-service by operating his truck without logging in. When examining the testimony in the light most favorable to Employer, as we must because the Board found in its favor, there is undoubtedly substantial evidence to support the Board's findings.

10

While Claimant argues that he had good cause for his conduct because he was given permission to take the truck home over the weekend, this is irrelevant given that the Board did not find that Claimant was terminated for taking the truck home, but instead, found that Claimant used Employer's truck for personal business, without logging in, thereby falsifying his service hour records. Claimant also argues that he had good cause for not communicating with Employer due to a broken headset and other reasons. However, this claim is similarly irrelevant because Claimant was not terminated for a general lack of communication, but instead, for falsifying and not complying with hours-of-service requirements. Finally, Claimant claims that Employer had requested that he work beyond his maximum service hours on a number of occasions and that he did not return to Employer's site for five hours on April 12, 2017, because he was having a flare-up of knee pain. However, the Board specifically dismissed both arguments, stating that it rejected "[C]laimant's testimony and his witness's testimony that the employer encouraged him to work over his hours," and rejected "[C]laimant's reasons for why he did not return for five hours on April 12, 2017." (Board decision at 3.) As the arbiter of credibility, the Board was free to accept or reject the testimony of the witnesses in whole or in part and, on appeal, we may not disturb such determinations. Thus, because the Board did not credit Claimant's excuses for not complying with the hour-of-service rules, Claimant did not have good cause for violating the same.

Moreover, we have previously held that a claimant truck driver commits willful misconduct where he knowingly violates hours-of-service rules. *Jackson v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 2011 C.D. 2013, filed June 12, 2014), slip op. at 6;[4] *Dorman v. Unemployment Compensation Board of*

---

[4] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a)

*Review* (Pa. Cmwlth, No. 1047 C.D. 2012, filed June 24, 2013), slip op. at 5. Thus, the Board's findings support its legal determination that Claimant committed willful misconduct by "violating his hours of service and by falsifying his hours of service by not logging in while operating [Employer's] truck after repeated warnings." (Board decision at 3.)

Next, Claimant argues that there is not substantial evidence in the record to support the Board's findings that Claimant took Employer's truck without permission to work for an egg company that Claimant allegedly owns and that Claimant failed to communicate with Employer. While Claimant raised this issue in the statement of questions involved section of his brief, he waived the issue by failing to address or develop it in the argument section of his brief. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *Pennsylvania Gaming Control Board v. Unemployment Compensation Board of Review*, 47 A.3d 1262, 1265 (Pa. Cmwlth. 2012) (concluding that failure to develop an issue in a brief will result in waiver); *Watkins v. Unemployment Compensation Board of Review*, 689 A.2d 1019, 1022 (Pa. Cmwlth. 1997) (concluding that arguments not properly presented in the argument portion of a brief in support of the issue raised in the statement of questions involved are waived).

Yet, even if Claimant had preserved this issue, he would not prevail. At the June 29, 2017 hearing, Ridenour stated that Claimant admitted at his termination meeting that he borrowed Employer's truck without authorization in order to work for an egg company. (N.T., 6/29/17, at 7.) Ridenour also testified that on April 12, 2017, Claimant did not communicate with Employer during the five-hour period when he was assigned a route only 1.25 miles from Employer's site. (N.T., 6/29/17,

12

at 6.) Thus, there is substantial evidence that Claimant took Employer's truck without authorization and did not communicate with Employer. However, regardless of whether there is substantial evidence for these particular findings of fact, they are ultimately irrelevant because the Board did not find that Claimant was terminated for these reasons, but rather, that Claimant was terminated for violating hours-of-service regulations by not logging into his onboard computer while driving Employer's truck.[5]

Finally, Claimant argues that Employer introduced inadmissible hearsay at the first hearing, which was unfairly prejudicial to him. According to Claimant, this hearsay undoubtedly influenced the Board's determination. Claimant contends that the prejudicial effect of allowing such hearsay on the record was not resolved by giving him an opportunity to testify at the September 15, 2017 hearing because the hearsay remained on the record and he was not given an opportunity to address the hearsay. Claimant appears to want this Court to consider the nature of the supposed "unsubstantiated hearsay" in the record and afford him "equitable" relief by reweighing the evidence in his favor. (Claimant's brief at 27-28.)

Claimant, however, failed to raise this hearsay issue in the statement of questions involved section of his brief. Pennsylvania Rule of Appellate Procedure 2116 provides that "no question will be considered unless it is stated in the statement of questions involved or is fairly suggested therein." Pa.R.A.P. 2116. Where an issue is not raised in the statement of questions involved, it is waived. *Mazur v.*

---

[5] It would appear that Claimant owns his own tractor trailer, but not his own egg company, (N.T., 6/29/17 at 7), as found by the Board in Findings of Fact 14 and 15, *see* F.F. Nos. 14-15. However, these mistakes are irrelevant because the Board did not find that Claimant was terminated because he used Employer's truck for his *own* egg company. *See Sturpe v. Unemployment Compensation Board of Review*, 823 A.2d 239, 242 (Pa. Cmwlth. 2003) (holding that errors are harmless if they have no effect on the outcome of the case); *Hussey Copper Ltd. v. Unemployment Compensation Board of Review*, 718 A.2d 894, 899 (Pa. Cmwlth. 1998) (same).

*Unemployment Compensation Board of Review*, 193 A.3d 1132, 1137 (Pa. Cmwlth. 2018); *Oliver v. Unemployment Compensation Board of Review*, 5 A.3d 432, 440 (Pa. Cmwlth. 2010); *Leone v. Unemployment Compensation Board of Review*, 885 A.2d 76, 80-81 (Pa. Cmwlth. 2005). Here, in the statement of questions involved section of his brief, Claimant only raised substantial evidence challenges to factual findings made by the Board but did not raise any hearsay issue; therefore he has waived the issue.

Assuming *arguendo* that Claimant had preserved this issue, his argument would still fail. Claimant maintains that two documents introduced into the record at the June 29, 2017 referee hearing contained inadmissible hearsay. Claimant appears to be referring to two documents that were introduced as exhibits at the June 29, 2017 hearing.

The first document discussed by Claimant is the first page of Employer Exhibit No. 2, a text message that Ridenour allegedly received from Claimant (Text Message). (N.T., 6/29/17, at 9; Employer Ex. No. 2.) At the hearing, Ridenour testified that Claimant sent the Text Message, in which Claimant alleged that he was unable to communicate because satellites were falling out of the sky. *Id.* The second document discussed by Claimant also appears to be part of Employer Exhibit No. 2, which is a letter from Claimant's supervisor in which he supposedly discussed the reasons for Claimant's discharge (Letter). *Id.* While Claimant assails the Board and referee for permitting the introduction of the Letter, he then inconsistently argues that it supports his position by supposedly demonstrating that Employer gave him permission to take his work truck home with him.

It is well established that "hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding of the Board," but that "[h]earsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of the Board, [i]f it is corroborated by any competent evidence

in the record, but a finding of fact based [s]olely on hearsay will not stand." *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). However, where the Board errs in admitting hearsay testimony, the error is harmless if other competent evidence, standing alone, exists in the record to support the Board's findings. *See Nabisco, Inc. v. Workmen's Compensation Appeal Board (Cummings)*, 651 A.2d 716, 718-19 (Pa. Cmwlth. 1994); *Pfanders v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 264 C.D. 2009, filed November 16, 2009), slip op. at 12; *see also Rankin v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 883 C.D. 2009, filed January 22, 2010), slip op. at 8-9 (holding that even though hearsay evidence was admitted in error, such error was harmless because the Board did not rely on it to render its decision).

Here, although Claimant did not object to the introduction of any evidence at the June 29, 2017 hearing, because he was not present, at the September 15, 2017 remand hearing his counsel lodged a hearsay objection to the Letter. (C.R. at Item No. 15, N.T., 9/15/17, at 2.) The referee noted that the objection would be on the record for the Board to consider. (N.T., 9/15/17, at 3.)

There is absolutely no indication that the Board relied on, or even considered, Employer Exhibit No. 2 in rendering its decision. In its decision, the Board stated that it reviewed the testimony of both Claimant and Employer and found Employer's witnesses more credible. (Board decision at 3.) The Board did not mention Employer Exhibit No. 2 and, as discussed in the preceding section, the testimony of Employer's witnesses provides substantial evidence that Claimant failed to log in to his truck's computer, violated hours-of-service regulations, and falsified

15

his hours-of-service. Thus, the Board's findings of fact were not based on hearsay evidence.[6, 7]

## Conclusion

Accordingly, because there is substantial evidence to support the Board's determination that Claimant engaged in willful misconduct by knowingly violating hours-of-service rules and by falsifying his hours-of-service by not logging in while operating Employer's truck, the Board's order denying Claimant UC benefits is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[6] However, even if the Board had relied on Employer Exhibit No. 2, this evidence was admissible and/or sufficiently corroborated by other competent evidence in the record such that the Board would have been permitted to rely on it in rendering its findings of fact. *See Walker*, 367 A.2d at 370. First, the Text Message sent by Claimant regarding satellites falling from the sky was corroborated by Ridenour, who testified that Claimant made a similar assertion at his termination meeting. (N.T., 6/29/17, at 9.) Moreover, both the Text Message sent by Claimant and the statement made by Claimant at his termination meeting were party admissions that were admissible. *See Sipps v. Unemployment Comp. Bd. of Review*, 181 A.3d 479, 483 n.9 (Pa. Cmwlth. 2018) (holding that the words of a party constitute an exception to the hearsay rule and that, therefore, party admissions may support a referee's finding of fact). Second, although the Letter was written by Claimant's supervisor, who did not testify, the Letter mainly details the reasons for Claimant's discharge, which were corroborated by Ridenour's testimony. Thus, even if the Board had relied on the Letter, which it did not, there was evidence in the record to corroborate its contents.

[7] Claimant also argues that he was prejudiced by not having the opportunity to object to Employer's hearsay evidence at the June 29, 2017 hearing based on the referee's failure to continue the hearing and that this alleged error was not rectified by the September 15, 2017 hearing, at which Claimant testified, because the hearsay evidence remained on the record. However, the Board has wide latitude to order remand hearings and is not required to order a *de novo* hearing, even when a party had proper cause for not appearing at an original hearing. *Milewski v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 2059 C.D. 2012, filed May 23, 2013), slip op. at 5-6; *Stop-N-Go of Western Pennsylvania, Inc. v. Unemployment Compensation Board of Review*, 707 A.2d 560, 564 (Pa. Cmwlth. 1998).

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert D. Anderson,                 :
              Petitioner      :
                                   :    No. 144 C.D. 2018
         v.                    :
                                   :
Unemployment Compensation   :
Board of Review,              :
              Respondent   :

## _ORDER_

AND NOW, this 8th day of February, 2019, the January 5, 2018 order of the Unemployment Compensation Board of Review is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge