# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Messiah Lifeways,          :
         Petitioner          :
         :
         v.          :    No. 671 C.D. 2025
         :
Unemployment Compensation          :
Board of Review,          :
         Respondent    :    Submitted: April 13, 2026


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE MATTHEW S. WOLF, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                              FILED: May 8, 2026

Before this Court is Messiah Lifeways' (Employer) appeal of the April 28, 2025 decision of the Unemployment Compensation (UC) Board of Review (Board), which granted benefits to Kierstyn Davis (Claimant) under Section 402(e)[1] of the UC Law after granting her request for reconsideration of the Board's prior decision denying her benefits under the same. After careful consideration, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). Section 402(e) of the UC Law provides, in relevant part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work[.]"

## I. BACKGROUND

Claimant filed for UC benefits on November 11, 2024, with an effective date of November 3, 2024. Certified Record (C.R.) at 003. The UC Service Center sent Claimant a determination on December 11, 2024, denying her benefits on the basis of her separation from Employer because she was terminated for sleeping at work. *Id.* at 050. Claimant filed an appeal from the UC Service Center's determination that same day. *Id.* at 065. In her appeal, Claimant stated that she did not fall asleep at work intentionally and that circumstances, including her homelessness, recent pickup of additional shifts, and lack of sleep for several days leading up to the incident caused that event. *Id.* at 064-65.

A Referee conducted a hearing on Claimant's appeal on January 21, 2025. At the hearing, Claimant testified that she had worked for Employer as a Certified Nursing Assistant (CNA) from July 2024 until her termination in October 2024 in an as-needed (PRN)[2] position. C.R. at 158. In spite of her position being PRN, she testified that she was working approximately 20 to 40 hours per week, but often closer to 32 to 40, due to picking up extra shifts. *Id.* at 159. As to the circumstances that led to her falling asleep at work, Claimant stated:

> During the time that I was working at Messiah, I was working a full-time job during the day. I was also a full-time student and working at Messiah. But in the midst of that, I was also homeless and living in my car. So at the time that I fell asleep, it wasn't intentional. I did not mean to. My body pretty much shut down on me. And I do remember when I woke up that I actually felt a little like, to -- for lack of a better word, like dazed in a sense, because I had been up for like days at a time because I

---

[2] The acronym "PRN" comes from the Latin phrase "*pro re nata*," approximately translating to "as needed" or "as the circumstances require." *PRN,* Merriam-Webster*,* https://www.merriam-webster.com/dictionary/prn (last visited May 7, 2026).

lived in my car for the most part. At that time, I was living in my car. And at that point, I was living in my car now for, I want to say, seven months. It was October. Yeah, seven months at that time. So I was just -- I was just exhausted pretty much picking up shifts at Messiah, still working my full-time job during the day, and also being a -- being a student, which I had been a student by that time for a year already. So -- so, yeah. So my reason for falling asleep was just that my -- my body just -- just gave out for the most part, as – as well as the time that I had fallen asleep before that I was warned about a few days prior.

C.R. at 163. Employer's witnesses, Kwasi Abrokwa and Kimberly Butler, also testified. They stated that Claimant was terminated for sleeping at work and explained that Claimant had previously fallen asleep on the job earlier in October, was given a final warning, and was ultimately terminated when it happened again. *Id.* at 160-62.

The Referee issued a decision on January 23, 2025, and found the following facts:

1. The [C]laimant was working PRN as a [(CNA)] for [Employer] since July 1, 2024 earning $19.50 averaging 30 hours per week.

2. The [C]laimant was issued a final warning on October 10, 2024 for sleeping on the job.

3. The [C]laimant was found sleeping on the job again on October 16, 2024.

4. The [C]laimant was terminated on October 18, 2024 for sleeping on the job.

C.R. at 190. The Referee concluded that Claimant was ineligible for UC benefits under Section 402(e) of the UC Law, 43 P.S. § 802(e), as her termination from

3

Employer was the result of willful misconduct. *Id.* Claimant appealed from the Referee's decision to the Board on February 5, 2025. *Id.* at 202.

In a decision issued March 6, 2025, the Board incorporated the Referee's findings of fact and conclusions of law and affirmed the decision to deny Claimant benefits. C.R. at 214-15. The Board concluded that Employer met its burden of proof under Section 402(e) of the UC Law that Claimant had been terminated for willful misconduct, namely falling asleep at work after Employer had previously warned Claimant about such conduct. *Id.*

On March 14, 2025, Claimant filed a request for reconsideration. She highlighted the extenuating circumstances which led to the incident, essentially arguing that her conduct (i.e., falling asleep at work) was neither willful nor intentional. C.R. at 224.

On April 1, 2025, the Board granted Claimant's request for reconsideration. In so granting, the Board stated: "[t]his matter is reopened to allow the Board to consider whether it failed to consider relevant law or committed an error of law in denying benefits to the claimant under Section 402(e) of the UC Law." C.R. at 232.

Subsequently, on April 28, 2025, the Board issued a new decision reversing the Referee's determination and granting Claimant benefits. In this decision, the Board issued new findings of fact. Specifically, the Board found:

> 1. The [C]laimant was employed as a PRN [CNA] by [Employer] from July 1, 2024 until October 18, 2024, working nights, at an average hourly wage of $19.50.
>
> 2. During the employment, the [C]laimant was also employed during the day on a full-time basis by another employer.

4

3. On October 10, 2024, [Employer] issued a final warning to the [C]laimant for sleeping on the job.

4. On October 16, 2024, the [C]laimant was discovered sleeping on the job during her overnight shift.

5. The [C]laimant admitted to [Employer] that she had fallen asleep during work hours.

6. During the employment, and at the time of the incident, the [C]laimant was homeless and living in her car.

7. At the time of the incident, the [C]laimant was in a state of exhaustion and had not slept for a number of days.

8. The [C]laimant did not fall asleep on the job on purpose, but did so due to physical exhaustion.

9. On October 18, 2025 [sic[3]], [Employer] discharged the [C]laimant for sleeping on the job.

C.R. at 248-49.  Employer subsequently appealed to this Court.

## II. ISSUES

On appeal,[4] Employer raises three arguments for our consideration. First, it contends that the Board abused its discretion by granting Claimant's request for reconsideration.  Second, Employer asserts the Board's findings of fact and conclusions of law are not supported by substantial evidence of record.  Third and

---

[3] The incorrect date in this finding of fact appears to be a typographical error (October 2025 was several months in the future of the issuance of the Board's April 28, 2025 decision) and is harmless for the purpose of our consideration.

[4] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

finally, Employer argues that Claimant did not meet her burden of proof in showing that she had good cause for falling asleep at work.

## III. DISCUSSION

### A. Board's Grant of Reconsideration

We turn first to Employer's assertion that it was an abuse of discretion for the Board to grant reconsideration. In support, Employer notes that Claimant requested reconsideration for purposes of offering additional testimony or evidence, but did not offer any such additional testimony or evidence. The Board responds that it appropriately exercised its discretion to reconsider whether it had properly applied Section 402(e) of the UC Law in this matter.

To succeed in a challenge to the Board's grant of reconsideration, a party must show that the Board abused its discretion. *Georgia-Pacific Corp. v. Unemployment Comp. Bd. of Review*, 630 A.2d 948, 951 (Pa. Cmwlth. 1993). "An abuse of discretion occurs if the agency decision demonstrates evidence of bad faith, fraud, capricious action or abuse of power." *Id*. "The party asserting such abuse of discretion has the burden of proving that it occurred." *Id*.

This Court has previously considered whether the Board abused its discretion in granting reconsideration to revisit legal issues in *Georgia-Pacific*, 630 A.2d 948. There, we stated:

> the Bureau presented no "new" legal theories to support its position; however, that does not necessarily mean reconsideration was inappropriate. If the [Board] felt it had not addressed or properly resolved the Bureau's legal issues in its initial decision and, desirous of the opportunity to do so, granted reconsideration, this could hardly be considered an abuse of discretion.

*Georgia-Pacific*, 630 A.2d at 953.

6

While Claimant's request for reconsideration stated she wished to "[o]ffer additional testimony/evidence[,]" C.R. at 224, she ultimately asked the Board to reconsider whether she committed willful misconduct because "[she] did not fall asleep on purpose[.]" *Id.* The Board accepted Claimant's request in order to "consider whether it failed to consider relevant law or committed an error of law in denying benefits to the claimant under Section 402(e) of the UC Law." C.R. at 232. As in *Georgia-Pacific*, the Board's desire to resolve legal issues it felt it had not properly addressed in its prior decision can hardly be considered an abuse of discretion. Accordingly, we reject Employer's first assertion of error.

## B. Substantial Evidence

Employer next contends that the Board's findings of facts are not supported by substantial evidence. Specifically, Employer challenges the Board's finding that Claimant unintentionally fell asleep at work due to exhaustion. Employer points to the fact that the Board relied on Claimant's homelessness and personal circumstances as the reason for falling asleep at work, while underemphasizing Claimant's statements that she was working a second full-time job with a different employer and was also a full-time student at the time of her termination.

The Board responds that, as fact-finder, it is the judge of credibility, and it is the Board's role to accept, reject, and weigh testimony. The Board further notes that while its findings of fact do not explicitly address Claimant's status as a full-time student, such findings do acknowledge that Claimant had other full-time employment and was on a final warning from Employer for previously falling asleep on the job.

This Court has previously explained:

"[t]he [Board], not the referee, is the ultimate fact finding body and arbiter of credibility in [UC] cases." *Deal v. Unemployment Compensation Board of Review*, 878 A.2d 131, 133 n. 2 (Pa. Cmwlth. 2005). "Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the [Board] and are not subject to re-evaluation on judicial review." *Bell v. Unemployment Compensation Board of Review*, 921 A.2d 23, 26 n. 4 (Pa. Cmwlth. 2007). "[T]he Board ... may reject even uncontradicted testimony if it is deemed not credible or worthy of belief." *Stockdill v. Unemployment Compensation Board of Review*, [] 368 A.2d 1341, 1343 ([Pa. Cmwlth.] 1977). We are bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, supporting those findings. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999).

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1227-28 (Pa. Cmwlth. 2017). Here, the Board's finding that Claimant fell asleep unintentionally due to exhaustion is supported by Claimant's testimony of record, which the Board explicitly credited. Mere disagreement with the weight afforded the evidence is not grounds for a substantial evidence challenge. *Chartiers Cmty. Mental Hosp. v. Unemployment Comp. Bd. of Rev.*, 134 A.3d 1165, 1173 (Pa. Cmwlth. 2016) ("This Court's review of a decision by the Board does not permit it to reweigh the evidence or substitute its own findings for those made by the Board.").

C. Good Cause

Third and finally, Employer argues that the Board erred as a matter of law in finding Claimant eligible for benefits under Section 402(e) of the Law. It maintains that this Court has previously held sleeping on the job is *prima facie* an

8

act of willful misconduct, and Claimant did not meet her burden of proving good cause for such willful misconduct. The Board agrees that Employer established a *prima facie* case for willful misconduct, but disputes Employer's position that Claimant did not carry her subsequent burden of proof. The Board argues that the unique circumstances Claimant faced at the time of her conduct led to physical exhaustion, which constitutes good cause in this specific scenario.

Section 402(e) of the Law provides, in relevant part, that an employee "shall be ineligible for compensation for any week … [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work[.]" 43 P.S. § 802(e). The term "willful misconduct" is not defined in the UC Law, however, this Court has defined it as

> (1) wanton and willful disregard of an employer's interests, (2) deliberate violation of rules, (3) disregard of the standards of behavior which the employer can rightfully expect from an employee, or, (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations.

*Waverly Heights*, 173 A.3d at 1228 (quoting *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014)). An employer bears the initial burden of showing a claimant's conduct rose to the level of willful misconduct. *Id.* Once the employer proves willful misconduct, the burden then shifts to the claimant to show good cause for her actions. *Id.* "A claimant has good cause if her actions are justifiable and reasonable under the circumstances." *Bruce v. Unemployment Comp. Bd. of Rev.*, 2 A.3d 667, 671 (Pa. Cmwlth. 2010) (quoting *Docherty v. Unemployment Comp. Bd. of Rev.*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006) (internal brackets and ellipsis omitted)).

Here, it is undisputed that Employer established a *prima facie* case of willful misconduct. *See* Employer's Br. at 13-15 & Board's Br. at 20-21 (collecting cases). Thereafter, the burden shifted to Claimant to show that she had good cause for her conduct. As to good cause, the Board found as fact that:

> 7. At the time of the incident, the [C]laimant was in a state of exhaustion and had not slept for a number of days.
>
> 8. The [C]laimant did not fall asleep on the job on purpose, but did so due to physical exhaustion.

C.R. at 249. While Employer takes issue with the Board's conclusion that Claimant's physical exhaustion constituted good cause and believes the Board should have considered more heavily the fact that Claimant worked another full-time job and was a full-time student, we reiterate that our role as an appellate Court is not to reweigh the evidence. *Chartiers Cmty. Mental Hosp.*, 134 A.3d at 1173. We note that the Board specifically "accept[ed] [C]laimant's explanatory testimony as credible and [found] that [C]laimant did not fall asleep on the job intentionally, but as the result of extreme exhaustion due to her living circumstances." C.R. at 249. These findings and conclusions are supported by substantial evidence of record, namely Claimant's testimony wherein she stated "at the time that I fell asleep, it wasn't intentional. I did not mean to. My body pretty much shut down on me. And I do remember when I woke up that I actually felt a little like, to -- for lack of a better word, like dazed in a sense, because I had been up for like days at a time." C.R. at 163.

On these facts, the Board concluded that it was "justifiable and reasonable" for Claimant to fall asleep under the extreme extenuating circumstances she was facing at the time of the incident. *Bruce*, 2 A.3d at 671. Mindful of our

standard of review and the unique and difficult circumstances at issue in this case, we cannot conclude that the Board erred as a matter of law in finding that Claimant established good cause for her willful misconduct.

## IV. CONCLUSION

For the foregoing reasons, the April 28, 2025 decision of the Board is affirmed.

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Messiah Lifeways,                                  :
                         Petitioner     :
                                      :
              v.                                  :     No. 671 C.D. 2025
                                        :
Unemployment Compensation                          :
Board of Review,                                   :
                        Respondent    :

## O R D E R

AND NOW, this 8th day of May 2026, the April 28, 2025 Decision and Order of the Unemployment Compensation Board of Review in the above-captioned matter is AFFIRMED.

 

_____
MATTHEW S. WOLF, Judge