IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Le Tran,                                          :
                            Petitioner            :
                                                  :
            v.                                    :
                                                  :
Unemployment Compensation                         :
Board of Review,                                  :    No. 1631 C.D. 2024
                            Respondent            :    Argued: October 9, 2025

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE FIZZANO CANNON                                FILED: November 4, 2025


            Le Tran (Tran) petitions for review from the October 2, 2024, order of
the Unemployment Compensation Board of Review (Board).  The Board's order
affirmed the referee's determination that Tran was not eligible for unemployment
compensation (UC) benefits because she voluntarily quit her employment with Penn
Asian Senior Services (Employer).  Upon review, we affirm.


                  **I. Factual and Procedural Background**

            In early September 2022, Tran filed a claim for UC benefits based on
her work as a home health aide for Employer from May 30, 2022, through June 28,
2022.  Certified Record (C.R.) at 3-8.  She asserted that Employer terminated her
employment.  *Id*. at 11.  Employer responded that Tran quit voluntarily because she
wanted to work only as her mother's caregiver, which Employer characterized as a
"family care only" arrangement, and when that became unfeasible, she did not
request a new assignment as required by Employer's policies.  *Id*. at 15-16 & 19-20.

Tran replied that Employer cut off communications with her. *Id*. at 25. On October 25, 2022, the UC Service Center issued an initial determination stating that Tran voluntarily quit and was not eligible for UC benefits. *Id*. at 30. Tran appealed and a December 12, 2022, hearing was held. *Id*. at 41 & 69.

Tran testified that she began working for Employer in May 2022 for $13 per hour in Philadelphia to provide home care for her mother, who has dementia. C.R. at 84-86. Tran related longstanding conflict with her father and sister (Linda), both of whom also lived in the house. *Id*. at 87. On June 23, 2022, police arrived at the house and served Tran with a protection from abuse order (PFA) regarding her mother, which Tran asserted was fraudulently obtained by her father and Linda; as a result, she had to move out of the house and was unable to care for her mother. *Id*. at 89-90.

Tran stated that after service of the PFA, she asked Employer's Vietnamese community coordinator, Tom Le (Mr. Le), whether he could have a social worker friend of hers take over her mother's care. C.R. at 91. He initially told her he could, but then texted her on July 1, 2022, that he could not talk to her anymore. *Id*. at 91-92. Mr. Le's message is of record and in response to Tran's request to meet with him, he replied: "No. I can not making anny [*sic*] conversation and text to you and to Linda any more. Please understand!" *Id*. at 125. Tran stated that neither Mr. Le nor anyone from Employer ever told her she could keep working for them with other clients. *Id*. at 92. She averred that she would have worked for other clients and denied that she quit. *Id*. She confirmed that a court hearing had not yet been held on the PFA. *Id*. at 91.

At the December 2022 hearing, Employer's human resources (HR) representative presented a form that she asserted Tran had signed as part of her

2

onboarding. C.R. at 94. The form is of record and titled "Acceptance or Declination of Future Work Assignments." *Id*. at 28. It contains two options; the first states that the individual does not want Employer to offer her a new assignment if the initial assignment ends for any reason. *Id*. The second option states that if the initial assignment ends and the individual wants new assignments, she will notify Employer in writing within 14 days; failure to do so will signify that the individual has quit. *Id*. The form had Tran's name written in the blank space for the individual and the first option refusing future assignments was checked. *Id*. A not easily legible signature was on the signature line, which was dated May 17, 2022. *Id*. Tran testified that she believed the signature was hers, although she did not recall signing the document. *Id*. at 94.

At that point, the referee halted the December 2022 hearing. C.R. at 94. He explained that if the PFA against Tran turned out to be valid, that would likely confirm her ineligibility for UC benefits, but if it was unfounded, the question whether she quit or was terminated by Employer could be cleanly addressed. *Id*. at 96. Tran's counsel objected, but the referee continued the hearing pending resolution of the PFA. *Id*. at 96-98.

The hearing resumed on March 7, 2023.[1] C.R. at 139. Employer presented testimony by Mr. Le and Mia Li (Ms. Li), Employer's home care supervisor, neither of whom appeared at the prior hearing. *Id*. at 140. Tran's counsel objected to their appearances, but the referee stated that their testimony could be heard because the record had not been closed at the December 2022 proceedings. *Id*. at 141-44.

---

[1] The record does not indicate the outcome of the PFA, but the hearing's resumption suggests that it was either invalid or expired because, as the referee previously explained, if the PFA was valid or active, that status would likely have negated Tran's eligibility for UC benefits.

Mr. Le testified that the arrangement with Tran caring for her mother began smoothly, but he soon learned of a dispute between Tran and Linda over their mother's care and that the police had been called to the house. C.R. at 146. He also had some communications with Linda. *Id*. After the PFA was issued against Tran, she could not be in the family home to care for her mother and Mr. Le was directed by Victoria Lee, a coordinator for the Philadelphia Corporation for Aging (PCA), to take Tran off the schedule, which he did. *Id*. at 147. He asked Tran if she wanted to work for other clients, but she only wanted to work with her mother. *Id*. She continued to call and text him about her situation after that. *Id*. at 150.

Regarding the July 1, 2022, text message, Mr. Le stated that he did not intend to fire Tran and was trying to tell her that he could not take sides between her and Linda or talk to her anymore about her family issues because that was for a court to decide. *Id*. at 150-51. He told Tran to contact him if she wanted to work for another client, but she did not do so. *Id*. at 151.

Ms. Li testified that on June 24, 2022, the day after the PFA against Tran was issued, Ms. Lee from PCA told Ms. Li to call Tran because Employer had to investigate her mother's well-being. C.R. at 154-55. Tran did not seem to understand Ms. Li, who asked Mr. Le to follow up. *Id*. After that, the mother came in with Linda and Ms. Li detected no signs of abuse. *Id*. at 155. Ms. Li signed Linda up to be the mother's aide after reporting to Ms. Lee at PCA. *Id*. Ms. Li would have assigned Tran to another client but relied on the form Tran signed in May 2022, which indicated that she only wanted to work for her mother. *Id*. at 156-57. Ms. Li did not see Tran sign the form because Mr. Le had done the paperwork with Tran. *Id*. Ms. Li stated that Employer did not ask her to testify at the initial hearing in December 2022. *Id*.

Tran resumed her testimony and reiterated that nobody from Employer asked her to take another assignment after the PFA was issued against her. C.R. at 157. She believed that the July 1, 2022, text Mr. Le sent her saying that he couldn't talk to her anymore meant that she would not get any more work from Employer. *Id*. at 158. She maintained that she never told Mr. Le or anyone at Employer that she quit and that she would have accepted another assignment if it had been offered. *Id*. at 159-60. She did not recall signing the form declining to work for anyone else because Mr. Le told her that he would "take care of all the paperwork." *Id*. Contradicting her previous testimony, she stated that she did not think the signature on the form was hers. *Id*. at 160-61. In response, Employer submitted into evidence copies of Tran's signature on her appointment of counsel and passport. *Id*. at 127 & 159-61; Supplemental Record at 5.

Before the hearing ended, and in response to questioning by the referee, Employer's HR representative stated that because Employer's investigation indicated Tran's mother had not been abused, it could have placed Tran with another client even though the PFA against her remained open during the relevant time. *Id*. at 165-66.

The referee's March 7, 2023, decision affirmed the UC Service Center's denial of benefits. C.R. at 169-70. The referee credited Employer's witnesses and determined that after the PFA made it impossible for Tran to work with her mother, she declined to work for other clients and quit working for Employer. *Id*. On Tran's appeal, the Board agreed with her that the referee improperly allowed Mr. Le and Ms. Li to testify at the second proceeding when they had not been called for the initial proceeding, but the Board stated that their testimony had not been considered in its decision. *Id*. at 210. However, the Board

5

also adopted and incorporated the referee's findings and conclusions. *Id*. at 209-10. In its reasoning, the Board did not rely on the testimony of Employer's witnesses, but on the form expressing Tran's wish to work only for her mother. *Id*. at 210. The Board noted Tran's acknowledgement in her testimony that "the paper contained her signature" despite her additional testimony that she did not remember signing it. *Id*. As such, the Board considered and treated the form as evidence that Tran knowingly expressed to Employer that she only wanted to work with her mother and knew that "she was turning down future assignments when she completed the form." *Id*. To the Board, the form indicated Tran's intention to quit whenever her assignment with her mother ended and meant that after issuance of the PFA, when she was no longer able to work with her mother, she did in fact quit and, accordingly, was not eligible for benefits. *Id*. Tran petitioned for review to this Court.

## II. Issues

Tran asserts that the referee erred in continuing the hearing and that the Board erred in upholding the referee's findings and conclusions while asserting that it disregarded the improper testimony of Mr. Le and Ms. Li, upon which the referee relied. Tran's Br. at 16-18. Tran next argues that the Board erred in failing to conclude that Mr. Le's July 1, 2022, text telling Tran he could not talk to her anymore terminated her employment. *Id*. at 18-21. Lastly, Tran maintains that the Board erred in concluding that the form Tran signed constituted a valid "preemptive" intent to quit if she could not care for her mother.[2] *Id*. at 21-28; Tran's Reply Br. at 2-5.

---

[2] Tran does not renew on appeal her assertion at the second hearing that the signature on the form in question was not hers.

## III. Discussion

### A. Admission of Employer's Witnesses' Testimony

Generally, witnesses may not testify at a subsequent unemployment proceeding unless good cause is shown why they did not previously appear and testify.[3] *Primecare Med., Inc. v. Unemployment Comp. Bd. of Rev.*, 760 A.2d 483, 488 (Pa. Cmwlth. 2000). This principle has usually been applied in the remand context to ensure that a party does not get the proverbial second bite at the apple after hearing the other side's evidence. *Id.* (concluding that referee properly excluded testimony of employer's witness at remand hearing where employer did not seek to have witness testify at original hearing); *Waste Mgmt. v. Unemployment Comp. Bd. of Rev.*, 651 A.2d 231, 235 n.4 (Pa. Cmwlth. 1994) (declining to remand for testimony by employer's witness where employer failed to ensure witness's appearance at original hearing). For purposes of this discussion, and because the Board ultimately agreed with Tran on this point, we will extend this premise to the continuance at issue here.[4]

Section 504 of the Unemployment Compensation Law (UC Law)[5] states that the Board "may affirm, modify, or reverse the determination" of the referee "on the basis of the evidence previously submitted in the case" if the Board's

---

[3] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. 2 Pa.C.S. § 704; *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[4] We acknowledge, however, the incongruity in Tran's challenge to the propriety of Employer's presentation of new witnesses at the reconvened hearing, while she herself offered new testimony that directly contradicted her statement at the initial session of the hearing that the signature on the employment preference form was hers.

[5] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 824.

decision sets forth "the reasons therefor." 43 P.S. § 824. The Board may rely on different facts and reasoning from those of the referee if the facts and reasoning are supported by the record and procedural fairness has been afforded to the parties. *Spence v. Unemployment Comp. Bd. of Rev.*, 29 A.3d 117, 118-19 (Pa. Cmwlth. 2011).

Here, Employer did not bring Mr. Le or Ms. Li to the initial hearing in December 2022 and did not ask the referee for a continuance based on the materiality of their testimony.[6] After Tran's testimony, the referee continued the hearing so that the PFA could be resolved in court as a prerequisite to determination of whether she quit or was legitimately terminated for cause. C.R. at 96-98. When Employer brought Mr. Le and Ms. Li to the resumption of the hearing in March 2023, the referee allowed their testimony over Tran's objection because he had not yet closed the record. *Id*. at 141-44. The referee credited the testimony of Employer's witnesses over Tran's in concluding that she refused Employer's offer to work for other clients. *Id*. at 170.

The Board agreed with Tran and stated that to avoid unfair prejudice to her, it did not consider Employer's witnesses' testimony in its determination; however, it also stated that it adopted and incorporated the referee's findings and conclusions. *Id*. at 209-10. Tran argues that the referee erred in allowing a continuance so that Employer could bring witnesses that it had not brought to the initial hearing and that despite the Board's disclaimer, its statement that it adopted and incorporated the referee's determinations that relied on Employer's witnesses'

---

[6] The unemployment regulations state that the absence of a witness will generally not be a sufficient basis for a continuance "unless it appears that the testimony and evidence he could give would be competent and relevant to the issues involved and that the information is essential to a proper determination of the case." 34 Pa. Code § 101.23.

8

testimony left it with no evidentiary basis on which to conclude that she quit and was not fired. Tran's Br. at 16-18; Reply Br. at 5-9. She avers that this led the Board to a result so prejudicial as to violate due process. *Id*. The Board responds that any error in the referee's continuance of the hearing and subsequent acceptance of Mr. Le and Ms. Li's testimony was not prejudicial because the Board did not rely on their testimony in its decision. Board's Br. at 6-7.[7]

We acknowledge the ostensible inconsistency between the Board's initial statement adopting and incorporating the referee's conclusions and findings and its subsequent statement that it disregarded Employer's witnesses' testimony from the resumed hearing, which the referee had credited and relied upon. C.R. at 170 & 209-10. However, the Board did not rely on or even cite Employer's witnesses' testimony in its own reasoning. Rather, the Board relied on the form Tran signed indicating that she wanted no assignments other than for her mother and on her related testimony. C.R. at 210. The form was introduced into evidence at the first proceeding in December 2022 where Tran, represented by counsel, testified that she believed the signature was hers although she did not recall signing it, and notwithstanding her subsequent statement at the resumed hearing that she did not think the signature on the form was hers. *Id*. at 94 & 160.

Because the Board disregarded Employers' witnesses' testimony, it did not need to resolve any conflicts between their testimony and Tran's testimony. Accordingly, without passing on the merits of the Board's ultimate determination, which will be addressed below, we conclude that as a question of procedural fairness, any discrepancy or lack of clarity in the Board's expressed adoption and incorporation of the referee's findings of fact pertaining to Employer's witnesses did

---

[7] Employer has not participated or submitted a brief to this Court in this case.

not constitute reversible error because the Board ultimately disregarded Employer's witnesses' testimony from the resumed hearing and relied primarily on evidence admitted at the initial hearing prior to that testimony.

We also note Tran's argument that the referee erred in continuing the initial hearing, which enabled Employer to present witnesses at the resumed hearing whom it had not brought to the first proceeding. Tran's Br. at 16-18. However, the referee's stated purpose for continuing the proceedings was not for Employer's benefit. The referee explained that the continuance was to allow time for the PFA to be resolved through the courts because if the PFA turned out to be valid, that would likely confirm Tran's ineligibility for UC benefits, but if it was unfounded, the question whether she quit or was terminated by Employer could be cleanly addressed. C.R. at 96. The relevant regulations state that a continuance "will be granted only for proper cause and upon the terms as the tribunal may consider proper." 34 Pa. Code § 101.23(a). Tran does not contest the referee's stated reason for the continuance and we see no reason that it was not proper cause for a continuance in these circumstances. As discussed above, any error the referee committed by allowing Employer's witnesses to testify at the resumed hearing was cured by the Board's express disregard of that evidence.

### B. Mr. Le's July 1, 2022, Text Message to Tran

In UC matters, the Board is the ultimate factfinder and is empowered to make its own determinations as to evidentiary weight. *Constantini v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 838, 843 (Pa. Cmwlth. 2017). This Court may not reweigh the evidence or substitute its own findings for those made by the Board. *Chartiers Cmty. Mental Health & Retardation Ctr. v. Unemployment Comp. Bd. of Rev.*, 134 A.3d 1165, 1173 (Pa. Cmwlth. 2016). That there may be

10

record evidence that could support a contrary conclusion does not mean that the findings of fact are not supported by substantial evidence. *Constantini*, 173 A.3d at 842-43. However, although the Board's findings of fact are conclusive upon appeal, the legal conclusions drawn by the Board from its findings of fact remain subject to judicial review. *McCarthy v. Unemployment Comp. Bd. of Rev.*, 829 A.2d 1266, 1270 (Pa. Cmwlth. 2003).

Section 402(b) of the UC Law states that a claimant "shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b). Whether a claimant quits or is discharged is a question of law to be determined based upon the Board's factual findings and the totality of the circumstances surrounding the incident must be considered. *Fekos Enters. v. Unemployment Comp. Bd. of Rev.*, 776 A.2d 1018, 1021 (Pa. Cmwlth. 2001). A claimant who, while employed, refuses to accept an offer of continued employment is "deemed to have quit" and will be ineligible for benefits unless cause is shown. *Hosp. Serv. Ass'n of Ne. Pa. v. Unemployment Comp. Bd. of Rev.*, 476 A.2d 516, 518 (Pa. Cmwlth. 1984). The claimant must show reasonable efforts to preserve the employment relationship, and a claimant's failure to request alternative employment cannot be excused solely on the grounds that the employee assumed that such employment was not available. *Dickhoff v. Unemployment Comp. Bd. of Rev.*, 449 A.2d 807, 810 n.2 (Pa. Cmwlth. 1982). Each situation "must be examined on an individual basis to understand the exigencies the claimant faced at the time [she] decided to separate from employment." *Hohl v. Unemployment Comp. Bd. of Rev.*, 261 A.3d 622, 627 (Pa. Cmwlth. 2021).

Tran argues that the Board erred in determining that she voluntarily quit. She maintains that she showed intent to continue with Employer and resume caring for her mother after resolution of the PFA. Tran's Br. at 20. She asserts that by contrast, Mr. Le, her primary contact for Employer, cut off communication with her through his July 1, 2022, text message telling her he could not talk to her anymore, which she reasonably believed meant that Employer initiated the separation and her employment was over. *Id*. at 20-21; Reply Br. at 8. She asserts that the Board should have expressly resolved the contradictions in the testimonial evidence in this regard and that its failure to do so constituted capricious disregard of evidence. Reply Br. at 7-9.

The Board responds that Tran bore the burden of showing that she did not voluntarily quit after the PFA prevented her from caring for her mother, which in this context required showing that she requested another client or did not decline Employer's offer of another client, and that she failed to carry that burden. Board's Br. at 8-15. The Board maintains that Mr. Le's text did not terminate Tran but formally confirmed her previously stated position that she would only work for her mother and was not interested in other clients, as evidenced on the form she signed in May 2022. *Id*.

Tran's argument asks this Court to reweigh the Board's evaluation of the evidence, particularly the witnesses' credibility, which we may not do. *Chartiers Cmty. Mental Health & Retardation Ctr.*, 134 A.3d at 1173. Moreover, as discussed above, the Board did not rely on Employer's witnesses' testimony in determining that Tran voluntarily quit her employment; as such, the Board did not need to address Mr. Le's text message or expressly resolve any conflicting evidence. C.R. at 209-10. Instead, the Board specifically limited the basis for its conclusion to the

12

implications of the May 2022 form, which it found through Tran's testimony that she had signed. *Id*. The Board concluded that the signed form indicated Tran's expressed intent to work for Employer only as her mother's caregiver. *Id*. As this form is the subject of Tran's third issue on appeal, we address it next.

### C. The May 2022 Employment Election Form

When circumstances result in a temporary absence from employment, the claimant bears the burden of preserving the employment relationship by resuming contact with the employer and conveying intent to work again within a reasonable time, the length of which "must be measured by all the circumstances known by both the employer and [claimant]." *McCarty v. Unemployment Comp. Bd. of Rev.*, 380 A.2d 1331, 1333 (Pa. Cmwlth. 1978). As noted, a claimant's failure to request alternative employment cannot be excused solely on the grounds that the claimant assumed such employment was not available. *Dickhoff*, 449 A.2d at 810 n.2. The claimant must show that he or she has taken "all necessary and reasonable steps" and exhausted all alternatives to preserve the relationship. *Mroz v. Unemployment Comp. Bd. of Rev.*, 313 A.3d 1150, 1152 (Pa. Cmwlth. 2024). Although we have stated that we may not "infer a credibility determination merely from the decision of the factfinder against the party with the burden of proof," remand in the absence of an express credibility determination is only necessary where it is "not clear from the adjudication that a credibility determination has been made." *Kirkwood v. Unemployment Comp. Bd. of Rev.*, 525 A.2d 841, 845 (Pa. Cmwlth. 1987).

The "*Walker* Rule" states that if hearsay evidence is admitted without objection, it will be given its natural probative effect and may support an agency's

finding if it is corroborated by any competent evidence in the record, but a finding based solely on hearsay will not stand. *Hauck v. Unemployment Comp. Bd. of Rev.*, 271 A.3d 961, 967 (Pa. Cmwlth. 2022) (citing *Walker v. Unemployment Comp. Bd. of Rev.*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976)). However, "[t]he *Walker* Rule need not be considered if evidence is admissible under an exception to the hearsay rule." *Lancaster Cnty. Child. & Youth Servs. Agency v. Dep't of Hum. Servs.*, 235 A.3d 402, 411 (Pa. Cmwlth. 2020) (citing *Estate of Fells by Boulding v. Unemployment Comp. Bd. of Rev.*, 635 A.2d 666, 669 (Pa. Cmwlth. 1993) (applying this principle in context of an admission by a party representative)). When considering whether a hearsay exception applies, we note that exceptions have been developed to allow admission of evidence based on its necessity and the "circumstantial probability of its trustworthiness." *Bayview Loan Servicing LLC v. Wicker*, 206 A.3d 474, 483 (Pa. 2019) (addressing the business records hearsay exception).

Relevant here, Pennsylvania Rule of Evidence 803(25) recognizes that an opposing party's statement or admission is admissible as a hearsay exception. Pa.R.E. 803(25); *Dillon v. Unemployment Comp. Bd. of Rev.*, 68 A.3d 1054, 1060 (Pa. Cmwlth. 2013). An admission may also be used as substantive evidence. *Alessandro v. Workers' Comp. Appeal Bd. (Precision Metal Crafters, LLC)*, 972 A.2d 1245, 1252 (Pa. Cmwlth. 2009). The admission must be offered by one party against the other party and will be admissible if it "(A) was made by the party in an individual or representative capacity; [or] (B) is one the party manifested that it adopted or believed to be true[.]" Pa.R.E. 803(25).[8]

---

[8] Rule 803(25) also includes three additional provisions for when the statement in question is made by a party representative or co-conspirator; these are not at issue here. *See* Pa.R.E. 803(25)(C)-(E).

14

A claimant's voluntary admissions on paperwork submitted to the UC offices or for an employer "constitute independent evidence of themselves and are therefore capable of independently providing competent evidence to support the findings of the [Board]." *Hauck*, 271 A.3d at 970-72 (stating that the claimant's acknowledgement on UC questionnaire that he failed a drug test was an admission that served as substantial evidence that he did in fact fail the test); *Sargent v. Unemployment Comp. Bd. of Rev.*, 630 A.2d 534, 538 (Pa. Cmwlth. 1993) (same conclusion with regard to claimant's indication on UC summary of interview form that she challenged the employer's explanation for laying off other employees). This includes a claimant's actual signature on an employer's form acknowledging a work policy or expressing a position on a work-related matter. *Dillon*, 68 A.3d at 1059-60 (concluding that claimant's signature on employer's form acknowledging employer's alcohol policy constituted a party admission that "abrogate[d]" his counsel's hearsay objection and served as evidence that he violated the policy).

Here, the Board disregarded Employer's witnesses' testimony and relied on the form proffered by Employer, which expressed Tran's wish to work only for her mother, to uphold the referee's conclusion. *See* C.R. at 210. Although the Board did not specifically comment on Tran's credibility, it stated: "While [Tran] alleged that she did not remember signing [the form], she did acknowledge that the paper contained her signature." *Id*.

Tran argues that the Board erred in relying on the form because it was hearsay that was never corroborated by other competent record evidence. Tran's Br. at 22-24. She adds that even if the form was competent evidence, the Board should not have relied on it to conclude that her state of mind remained the same when she was later unable to care for her mother due to the PFA; she maintains that the law

15

requires consideration of her mindset at the time of separation rather than reliance on an earlier statement of future intent. Reply Br. at 2-5. She also avers that the Board's disposition reflected capricious disregard of evidence in her favor. *Id*. at 5.

The record reflects that the form was admitted into evidence by Employer at the first hearing, without objection by Tran's counsel. C.R. at 94. At that hearing, Tran acknowledged her signature on the form but stated that she did not remember signing it. *Id*. At the second hearing, she contradicted her prior testimony and stated that she did not think the signature was hers. *Id*. at 159-61. Employer countered with examples of Tran's signature from her appointment of counsel and passport, although the Board did not address that evidence in its opinion. *Id*. at 127 & Supplemental Record at 5.

As noted, *Kirkwood* directs that we may not "infer a credibility determination merely from the decision of the factfinder against the party with the burden of proof"; however, that case specifies that a remand is not warranted unless it is "unclear from the adjudication that a credibility determination has been made." 525 A.2d at 845. Here, the Board cited Tran's testimony that the form contained her signature despite her assertion that she did not remember signing it. C.R. at 210. Although the Board did not specifically comment on Tran's credibility, it is clear from the Board's adjudication that it credited her testimony acknowledging her signature over her other testimony to the contrary.

The Board also did not comment on whether the form was hearsay or an admission. *See id*. at 210. However, the form is analogous to the employer's policy acknowledgement form signed by the claimant in *Dillon* and the UC forms in *Hauck* and *Sargent*. 68 A.3d at 1059-60; *see also* 271 A.3d at 970-72; 630 A.2d at 538. The form reflected Tran's expressed preference and Employer's understanding

16

that Tran wished only to work for her mother, that she was not interested in other clients, and that she would advise Employer if she changed her mind. Tracking the language of Rule 803(25), it was a statement proffered by Employer, made by Tran in her individual capacity, and which she manifested by her signature that she adopted or believed to be a true statement at the time she signed it. Pa.R.E. 803(25). As such, the form constituted an admission on Tran's part, the *Walker* Rule does not preclude it as competent substantive evidence, and additional corroboration was not necessary. *Lancaster Cnty. Child. & Youth Servs.*, 235 A.3d at 411.

We acknowledge Tran's assertion that even if the form represented her preference when she began working for Employer in May 2022, it cannot be relied on to reflect her state of mind in early July 2022 after the PFA negated her ability to be her mother's caregiver. Tran characterizes the Board's disposition as adopting a novel "pre-emptive quit" approach that treated the form she signed as a binding declaration. Tran's Reply Br. at 2-5. Tran points to her testimony that she would have accepted other assignments if they had been offered to her after the PFA barred her from working for her mother. *Id*. However, the burden was on Tran to show that she made all reasonable efforts to preserve the employment relationship even if she assumed no work would be available. *Dickhoff*, 449 A.2d at 810 n.2; *McCarty*, 380 A.2d at 1333. This was also Employer's expressed policy; the signed form stated that Tran understood her "responsibility to provide [Employer] with written notification of willingness to accept" other clients after an initial assignment ended and that failure to do so within 14 days of the end of the initial assignment would signify her intent to quit. C.R. at 28.

Tran points to her testimony that she would have worked for other clients if Employer had offered them and indicates that Employer was at fault for

17

not offering her any additional work. Tran's Reply Br. at 2-5. However, Employer's written policy as stated on the form comports with settled law that the claimant bears the burden to show that she has taken "all necessary and reasonable steps" to preserve the employment relationship; correspondingly, the employer does not bear the burden to offer alternative work. *Mroz*, 313 A.3d at 1152.

Even in the absence of Employer's witnesses' excluded testimony, Tran did not show that she took any such steps, although she did make efforts to ensure continuity of care for her mother. Her testimony that she assumed from Mr. Le's text that Employer would not give her any new assignments was insufficient to satisfy her burden. *See Dickhoff*, 449 A.2d at 810 n.2. The Board's determination did not create a "preemptive quit" theory based solely on the form; rather, the determination arose from the evidence that after signing the form, Tran took no positive actions to maintain the employment relationship by, for example, expressing to Employer a wish to work with other clients.

Relatedly, the Board's disposition did not constitute capricious disregard of evidence, which entails failure to resolve conflicts in the evidence, make essential credibility determinations, or ignore overwhelming evidence without comment. *Wise v. Unemployment Comp. Bd. of Rev.*, 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015). As discussed above, the Board's disregard of Employer's witnesses' testimony negated any conflicts in the evidence that would need to be resolved via credibility determinations and Tran failed to present "overwhelming" evidence that she met her burden according to the relevant law. As such, the Board's determination that she voluntarily quit and is not eligible for benefits was supported by the record, and we may not disturb it on review.

18

## IV. Conclusion

In light of the foregoing, the Board's October 2, 2024, order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Le Tran, :
                    Petitioner :
                    :
          v. :
                    :
Unemployment Compensation :
Board of Review, : No. 1631 C.D. 2024
                Respondent :

# **O R D E R**

AND NOW, this 4th day of November, 2025, the October 2, 2024, order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge